IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

WESLEY JAMES LOWERY                                                              PLAINTIFF

v.                              No. 4:11CV00345 JLH/HDY

MICHAEL J. ASTRUE, Commissioner
of the Social Security Administration                                            DEFENDANT

## OPINION AND ORDER

Wesley J. Lowery has appealed the Social Security Administration Commissioner's final decision to deny Lowery's claim for disability insurance benefits. Both parties have submitted briefs, and the case is ripe for decision. For the following reasons, the decision of the Commissioner is reversed, and this case is remanded.

The Court reviews the record as a whole to determine whether the Commissioner's decision is supported by substantial evidence and is free of legal error. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997); *see also* 42 U.S.C. § 405(g). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir. 1996) (citation omitted). In its review, the Court must consider evidence that detracts from the Commissioner's decision as well as evidence that supports it; the Court may not, however, reverse the Commissioner's decision merely because substantial evidence would have supported a different decision. *Sultan v. Barnhart*, 368 F.3d 857, 863 (8th Cir. 2004); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993).

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). "[A] 'physical or mental impairment' is an impairment that results from

anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

In the fall of 2008, Lowery filed for disability insurance benefits and supplemental security income, alleging that he had been disabled since July 18, 2008. Tr. 115-20. Lowery alleged that he was disabled within the meaning of the Social Security Act because of his back and leg problems. Tr. 145. His claims were denied twice, in late 2008 and early 2009, after which he filed a request for a hearing. Tr. 38-41, 71-72. On December 1, 2009, an ALJ conducted an administrative hearing at which Lowery and a vocational expert testified. Tr. 7-37. Lowery was forty-seven years old at the time of the hearing, with a high school education and experience in the fields of truck-driving and construction. Tr. 11.

The evidence available to the ALJ at the time of the hearing included a consultative examination performed by Dr. Rex Ross on December 11, 2008. Tr. 200-07. Dr. Ross diagnosed Lowery with low back syndrome stemming from an unknown etiology and mild degenerative disk disease of lumbar spine. Tr. 205. Dr. Ross also found that Lowery had moderate to severe limitations in his ability to walk, stand, sit, and lift, while noting that it was difficult to perform a complete assessment because Lowery could not tolerate the examination that involved his lower back. *Id.* Also available to the ALJ was documentation from a February 17, 2009, visit that Lowery made to the UAMS urology clinic because of swelling in the left part of his scrotum. Tr. 247-61. The physician at the urology clinic proposed a surgical repair, but Lowery decided to defer the surgical repair until his back pain was resolved. Tr. 247-48. Additionally, the record contained a residual functional capacity assessment completed by a medical consultant for the Arkansas state agency tasked with disability determinations on February 26, 2009. Tr. 233-40. That assessment

concluded that Lowery could engage in work at a medium exertional level. Tr. 240. The assessment did not take into account an MRI Lowery had at UAMS the following day. The MRI, which was also in the ALJ's record, found as follows:

> At L5-S1 level there is a small focal annular tear and diffuse disc bulge causing mild narrowing of the right neural foramen. At the L4-5 level there is diffuse disc bulge causing mild narrowing of the neural foramina bilaterally. L3-4 disc show diffuse bulge predominantly anteriorly. No spinal canal or neural foraminal compromise at this level. Rest of the intervertebral discs appear unremarkable. Lumbar vertebral bodies are normal in height and alignment. Pre and paravertebral soft tissues appear unremarkable. The conus medullaris and cauda equina nerve roots appear unremarkable.

Tr. 242. The only other evidence in the record consisted of notes from the Conway County Christian Clinic, which Lowery began to visit some months after he filed his application for disability. Tr. 263-78. While the notes are cursory and not very illuminating, they do consistently report that Lowery complained of back pain. *Id*.

After the hearing, the ALJ issued a written decision finding that Lowery had not been disabled within the meaning of the Social Security Act at any time from his onset date through January 28, 2010, which was the date of the decision's release. Tr. 45-53. On February 22, 2011, the Appeals Council denied Lowery's request for a review of the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. Tr. 1-3. Two months later, on April 20, Lowery filed his complaint initiating this appeal. Document #2.[1]

In his decision, the ALJ considered Lowery's impairments by way of the required five-step sequential evaluation process. Tr. 46-47. The first step is to determine whether the claimant is

---

[1] Lowery also subsequently filed for disability insurance benefits and supplemental security income based on an alleged onset date of January 29, 2010. Document #16-1, at 1-12. In that case, the ALJ found that Lowery was disabled. *Id*.

involved in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in substantial gainful activity, he will not be considered disabled, regardless of medical condition, age, education, or work experience. *Id*. § 404.1520(b). The second step is to determine whether the claimant has an impairment or combination of impairments that is "severe" and meets a duration requirement. *Id*. § 404.1520(a)(4)(ii). If not, the claimant will not be considered disabled. *Id*. The third step is to determine whether any impairments meet or equal a listed impairment. *Id*. § 404.1520(a)(4)(iii). If so, and if the duration requirement is met, the claimant will be considered disabled. *Id*. If the claimant does not meet or equal a listed impairment, then a residual functional capacity assessment is made. *Id*. § 404.1520(a)(4). This assessment determines, based on all relevant evidence in the record, what a claimant can still do in a work setting despite the claimant's limitations. *Id.* § 404.1545(a)(1). The fourth step is to determine whether the claimant has sufficient residual functional capacity to perform past relevant work. *Id*. § 404.1520(a)(4)(iv). If so, the claimant will not be considered disabled. *Id*. The fifth step is to determine whether the claimant is able to make an adjustment to other work, given the claimant's age, education, work experience, and residual functional capacity. *Id*. § 404.1520(a)(4)(v). If so, the claimant will not be considered disabled; if not, the claimant will be considered disabled. *Id*.

First, the ALJ found that Lowery had not engaged in substantial gainful activity since his alleged onset date. Tr. 47. Second, the ALJ found that Lowery had three severe impairments: "degenerative joint disease/degenerative disk disease of the lumbar spine, hypertension, and obesity." *Id.*[2] Third, the ALJ determined that Lowery's impairments did not meet or equal a listed impairment.

---

[2] Lowery's scrotal swelling did not constitute a severe impairment, the ALJ found, because it did not interfere with his ability to perform basic work activities. Tr. 47-48.

4

Tr. 48. Fourth, the ALJ found that Lowery retained the residual functional capacity to perform light work, with the following limitations: "[Lowery] cannot climb ladders, ropes, and scaffolds, kneel, crouch, or crawl and can only occasionally climb ramps and stairs, balance, and stoop." *Id*. The ALJ discounted the state agency's finding that Lowery could perform medium work on the basis that this assessment did not take into account Lowery's testimony or the MRI scan. Tr. 50. In making the residual functional capacity assessment, the ALJ found that Lowery's testimony concerning the limiting effects of his symptoms was not substantiated by the objective medical evidence and therefore it was "not fully credible." Tr. 50-51. The ALJ then found that Lowery was unable to perform any of his past relevant work. Tr. 51. Finally, based on the testimony of the vocational expert witness in response to a hypothetical question at the hearing, the ALJ found that there were a significant number of jobs in the national economy that Lowery could perform notwithstanding his limitations. *Id.* For example, Lowery could work as an assembler, a machine tender, or a fast-food worker, which are all three light/unskilled positions widely available both regionally and nationally. Tr. 52. Thus, the ALJ concluded, Lowery was not disabled. Tr. 52-53.

Lowery contends that the ALJ erroneously impugned his credibility and wrongly disregarded the uncontroverted opinion of Dr. Ross, which tainted the ALJ's hypothetical question to the vocational expert. Lowery contends that he is not capable of light work, as the ALJ found, and that the ALJ only found such a capability by misconstruing the available evidence, finding contradictions where there were none, and misapplying the relevant law.

The foundational case for credibility determinations in the Eighth Circuit is *Polaski v. Heckler*, which states the following:

> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the

5

> credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
> 1. the claimant's daily activities;
> 2. the duration, frequency and intensity of the pain;
> 3. precipitating and aggravating factors;
> 4. dosage, effectiveness and side effects of medication;
> 5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's subjective complaints *solely* on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

739 F.2d 1320, 1322 (8th Cir. 1984) (emphasis in original). "If the ALJ discredits a claimant's credibility and gives a good reason for doing so, [the Court] will defer to its judgment even if every [*Polaski*] factor is not discussed in depth." *Perkins v. Astrue*, 648 F.3d 892, 900 (8th Cir. 2011) (quoting *Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001)).

The Commissioner defends the ALJ's conclusion but does so in part based on reasons not stated by the ALJ in his opinion. In reviewing a social security appeal, the Court "may not uphold an agency decision based on reasons not articulated by the agency . . . ." *Banks v. Massanari*, 258 F.3d 820, 824 (8th Cir. 2001) (quoting *HealthEast Bethesda Lutheran Hosp. and Rehab. Ctr. v. Shalala*, 164 F.3d 415, 418 (8th Cir. 1998)). This is based on the "well-settled principle of administrative law that a reviewing court . . . cannot search the record to find other grounds to support the [agency's] decision." *Mayo v. Schiltgen*, 921 F.2d 177, 179 (8th Cir. 1990); *see also SEC v. Chenery Corp.*, 318 U.S. 80, 87, 63 S. Ct. 454, 459, 87 L. Ed. 626 (1943). Rather, a reviewing "court must consider the agency's rationale for its decision, and if that rationale is inadequate or improper the court must reverse and remand for the agency to consider whether to pursue a new rationale for its decision or perhaps to change its decision." *Mayo,* 921 F.2d at 179.

While the ALJ did not mention *Polaski*, he did cite to the regulations that state the same overall requirements. *See, e.g.,* 20 C.F.R. §§ 404.1529, 416.929; SSRs 96-4p, 96-7p. He then gave several reasons for why he found that Lowery was not fully credible and why he attributed only some credit to Lowery's testimony that his back pain and leg numbness prevented him from engaging in basic work activities. Tr. 50. The Court will analyze these reasons in turn.

First, the ALJ found an apparent contradiction between Lowery's testimony at the hearing and state agency records indicating that Lowery could cook easy meals and drive. *See* Tr. 213. The ALJ, however, did not specify what Lowery said in his testimony that contradicted the records, and the Court was unable to find a contradiction when reviewing the hearing transcript. On the contrary, when asked whether he cooks for himself, Lowery responded that while he can "go in and microwave something," he cannot do "any standing in front of that stove." Tr. 22. Heating food in the microwave is almost the definition of cooking an "easy meal." Furthermore, the note in the state agency record apparently was based on a questionnaire answer in which Lowery had stated that he prepares sandwiches and frozen dinners, and that he cooks everything in a microwave or "on a timer in my little oven." Tr. 163. There is no contradiction here. With respect to driving, Lowery testified that while he "hate[s] to drive because it hurts," he still drives once every month or so for emergency purposes. Tr. 22. This answer coincides with the state agency records stating that Lowery drives, Tr. 213, and with the questionnaire where Lowery wrote that he drives but he goes out "only if I have to." Tr. 164. Again, no contradiction appears here.

Second, the ALJ found a contradiction between Dr. Ross's findings from the December 2008 examination and medical records detailing Lowery's visit to the UAMS urology clinic approximately two months later. In his notes, Dr. Ross stated that Lowery had experienced chronic lower back pain

and numbness in both upper legs for five months, that Lowery walked with a slight forward lean in order to protect his back, that Lowery was unable to walk on his heels or toes, and that Lowery had moderate to severe limitations on his ability to walk, stand, sit, and lift. Tr. 200-05. The UAMS urology clinic record stated: "Pt states: ambulates w/o difficulty, steady gait." Tr. 251. The ALJ found that Lowery's statement at the urology clinic contradicted Dr. Ross's conclusion, and as a result, he explicitly discounted Dr. Ross's conclusion that Lowery was moderately to severely limited with regard to walking, standing, sitting, and lifting. Lowery argues that this is not a contradiction because his statement at the urology exam was "conceivably in response to whether his urology problem . . . affected his ambulation." Document #14, at 9. That argument is consistent with the concluding entry in the urology clinic note, which stated:

> IMPRESSION/PLAN:
> Left hydrocele with spermatocele.
>
> I talked to Mr. Lowery at great length about repairing it. He is familiar with the procedure. I explained the risks, possible complications, and alternatives to him. *He wants to get his back pain resolved first.* I told him that he could call us and we can schedule him for a left scrotal exploration with hydrocelectomy/spermatocelectomy.

Tr. 247-48 (emphasis added). The terse record from the urology clinic does not indicate whether the question asked of Lowery concerned how his scrotal issue affected his walking, or whether the question was more general in nature. And notably, the record does not directly quote Lowery—it is highly unlikely that Lowery used the phrase "ambulates without difficulty." Ambulation obviously was not the focus of Lowery's visit to the urology clinic, whereas it was a major focus of Dr. Ross's examination. Given this context, it is not reasonable to discount Dr. Ross's conclusion based on the ambiguous note from the urology clinic.

8

Third, the ALJ noted that Dr. Ross's findings that Lowery had moderate to severe limitations with regard to walking, standing, sitting, and lifting "seem inconsistent" with Dr. Ross's diagnoses of mild degenerative disk disease of the lumbar spine and low back syndrome. The ALJ did not, however, seek clarification from Dr. Ross. The ALJ has a duty to develop the record, and "[t]hat duty may include seeking clarification from treating physicians if a crucial issue is undeveloped or underdeveloped." *Samons v. Astrue*, 497 F.3d 813, 819 (8th Cir. 2007) (citation omitted). While an ALJ is not required to seek clarification after determining, based on sufficient evidence, that a physician's opinion is inherently contradictory or unreliable, here the ALJ made no such finding. Instead, he specifically noted only that Dr. Ross's findings "seem inconsistent." Tr. 50. And, as detailed above, his discounting of Dr. Ross's findings based on the urology clinic report was erroneous. In addition, the ALJ discounted Dr. Ross's opinion because it relied in part on Lowery's report of pain during some of the attempts to determine range of motion and did so in large part because he found Lowery not fully credible. Thus, if the ALJ's reasons for disbelieving Lowery are suspect, which they are, as this opinion details, so is his decision to discount Dr. Ross's opinions.[3] The ALJ failed to fully develop the record on this issue.

Fourth, the ALJ found Lowery's hearing testimony to be somewhat incredible and internally inconsistent because Lowery testified that: (a) he was experiencing disabling back pain and leg numbness; and (b) after originally injuring his back while unloading a lawnmower, he was still able to mow an entire lawn immediately thereafter. Simply put, (b) is a mischaracterization of Lowery's

---

[3] It should also be noted that the ALJ never gave Dr. Ross the opportunity to review the MRI conducted on February 27, 2009, and to state the impact that the MRI might have on his opinions. Nor has any other medical expert interpreted the findings of the MRI and stated an opinion on the issue of whether the MRI is objective evidence that supports Lowery's claimed limitations.

testimony. Lowery's description of how he first injured his back is much more accurately described as a process, not a momentary event, which eliminates the alleged inconsistency. Lowery testified as follows:

> [On the weekend of July 18, 2008,] I offered to mow the lawn for an elderly woman. And, I have a light lawn mower . . . and I have loaded it a hundred times in this truck by myself. That just happened to be the particular time it didn't do good. And I didn't figure it was going to be important, you know, it just kind of burned and I [k]new I damned me some, but I didn't think it was that bad. So, I went over and mowed her lawn for her because she couldn't find somebody, so I volunteered and I try to be true to my word. So I mowed it and I got it back on the truck and took it back home. And I couldn't get it off the truck. It fell and I couldn't stop it.

Tr. 14-15. Lowery's testimony thus indicates that he felt a burning sensation in his back when he first loaded the lawnmower, he shook it off and proceeded to mow, and then he was unable to unload the mower when he got back to his home because his back pain had apparently gotten worse. Lowery's testimony on this point was not inconsistent with the testimony that he has been experiencing disabling back pain since that onset date.

Finally, the ALJ observed that none of the records from Lowery's various visits to the Conway County Christian Clinic over a nearly two-year span indicated that Lowery's activities should be limited in any way. In riposte, Lowery argues that, while the clinic records indeed do not prescribe limitations, neither do they contradict the findings of Dr. Ross regarding moderate and severe limitations. In fact, Lowery contends, the records consistently show symptoms consistent with Dr. Ross's limitations. While the clinic records consistently refer to Lowery's back pain, the ALJ is correct that none of them actually mention any restrictions placed on Lowery by the examining physicians. And the Eighth Circuit has ruled, several times, that "the lack of significant restrictions placed on [a claimant's] activities by his doctors" can undermine the claimant's testimony of disabling pain. *Melton v. Apfel*, 181 F.3d 939, 941 (8th Cir. 1999) (citing *Smith v.*

*Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993)); *see also Tennant v. Apfel*, 224 F.3d 869, 871 (8th Cir. 2000) ("In discrediting Plaintiff, the ALJ properly relied on . . . the absence of physician-ordered limitations[] and the lack of objective medical evidence."). Here, however, the ALJ ignores the fact that there is not an "absence of physician-ordered limitations" and a "lack of significant restrictions." On the contrary, Lowery's primary examiner, Dr. Ross, prescribed significant restrictions and limitations. The ALJ could only find a lack of such limitations by ignoring the primary evidence in the record and focusing solely on the secondary evidence. Furthermore, the Conway County Christian Clinic notes are cursory, at best, and all of them reflect office visits that occurred after Lowery had ceased working. During the time encompassed by these notes, Lowery was not engaged in any substantial activity, so it is not apparent that the lack of restriction on Lowery's activities in these records proves much of anything.

"Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole." *Polaski*, 739 F.2d at 1322. Here, the ALJ has failed to point out any legitimate inconsistencies in the record that would permit a finding of a lack of credibility. The reasons cited by the ALJ do not withstand scrutiny, thus the Court will not defer to the ALJ's judgment on the issue. The ALJ's credibility determination is suspect, and as a consequence so is the ALJ's decision to discount Dr. Ross's findings and his question to the vocational expert, as those two decisions relied at least in part on the ALJ's credibility determination.

Furthermore, the ALJ failed to dully develop the record, as is required. Apart from the examination by Dr. Ross, the only determination of Lowery's residual functional capacity in the record is the assessment by the state agency, which found that Lowery could perform work at the medium exertional level. Tr. 233-40. The ALJ discounted that conclusion because the state agency

did not take into account Lowery's testimony or the MRI dated February 27, 2009. Tr. 50. In short, the ALJ discounted Lowery's testimony, the conclusions of the consultative examiner, and the conclusions of the state agency—which is pretty much all of the substantial evidence in the record. There is no meaningful evidence in the record that the ALJ did not discount. The crucial issue in this case is the extent to which Lowery was limited in his ability to walk, stand, sit, and lift. By discounting all of the substantial evidence in the record, the ALJ left that crucial issue undeveloped. The ALJ did not seek clarification from Dr. Ross regarding the apparent inconsistency between Dr. Ross's assignment of those moderate to severe limitations and his finding of mild degenerative disk disease. Nor did he solicit comment from Dr. Ross as to how the results of the MRI would impact his opinion. Again, the ALJ failed to fully develop the record.

The Court has carefully considered the ALJ's rationale for the decision in this case and has concluded that the rationale is inadequate and that the ALJ failed to fully develop the record. The proper course of action here is to remand so that the Commissioner may fully develop the record and consider whether to pursue a new rationale for its decision or perhaps change its decision. *See Mayo*, 921 F.2d at 179.

## CONCLUSION

For the reasons stated, this case is remanded pursuant to Sentence Four of 42 U.S.C. § 405(g) and *Melkonyan v. Sullivan*, 501 U.S. 89, 111 S. Ct. 2157, 115 L. Ed. 2d 78 (1991).

IT IS SO ORDERED this 29th day of October, 2012.

*J. Leon Holmes*
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE